We'll hear the next case, Zani v. Rite Aid. This case presents a pretty straightforward issue, does it not? Whether this was a health care message, which is an exception, and notwithstanding the fact that it might have also served other purposes, doesn't that dispose of the case, if that's true? The question is, what is a health care message? About flu season, get a flu shot. We can give you one. Flus are bad. There's a distinction between an advertisement and health care. And so when the FCC created this exemption, it was clear that it wasn't trying to create an exemption for advertisements, because it, in fact, did not have the authority to create an exemption for advertisements under the statute. And so you have to look at whether... What if it serves a message of advertising and is a health care message? The FCC has addressed this issue in the context of its rules, and what you do is you look at the primary purpose of the communication. But their primary purpose is always to make money, isn't it? I mean, Rite Aid is not a charity. They're not in the public service announcement business. They're in the business of selling health care services, as, for that matter, are doctors. So when they say, get a flu shot, and by the way, we can provide flu shots, they're not doing that primarily out of disinterest. They're doing it for commercial reasons. If they weren't doing it for commercial reasons, it wouldn't come within the exception because it wouldn't come within the prohibition. I understand that there will often be a financial incentive behind communications from a health care provider to its patients. However, in this case, there is no evidence of any health care purpose. The only evidence is of a marketing purpose. How is the message here any different from . . . It's longer, substantively. Is it any different from the message in the Lantner case? Well, in terms of the text of the message itself, I think what we have here is we have language that is identical to Rite Aid's radio and television advertisements for the flu shot. In Lantner, we said that this text about it's flu season, come schedule a flu shot, that that's a health care message. How is the message here substantively different from that? Other than being a little bit longer. There's two fundamental, crucial differences with the Lantner case. The first is that the plaintiff in Lantner had conceded that it was a health care message. The issue was never in dispute before this court. The second is in terms of the evidence of the purpose of the message. There was no evidence of a marketing purpose in Lantner. Here, there is only evidence of a marketing purpose. What I'm gathering from your answer is that in terms of the words, there isn't a substantive difference. Except for the fact that there are words here in Rite Aid's robocall that are taken directly from the radio and television advertisements. Why would that matter? I mean, in all kinds of radio and television advertisements, there's a lot of information given and a lot of misinformation given. It's about different subjects in the course of an ad. Why would the fact that the same words appear in what is concededly an advertisement automatically make this an advertisement depending on what the words are? It's not automatic. The point is that the district court needs to do a factual finding about the purpose of the message. That seems to me to be an entirely unworkable standard here. If it's not about the content, then every case is going to be an expensively litigated, discovery-rich inquiry into the subjective motivations of the company, right? Well, I don't think that's anything unique to the scenario. Why should that be in this case? If the message that's going out to the public can be objectively classified one way or the other, and maybe you have good arguments as to why this should be objectively classified as an advertisement, why isn't that the right standard to apply rather than to look to the subjective motivations? Because I guarantee you, if anybody from Rite Aid comes in and answers honestly, they're going to have to say, the reason we're doing this is we're spending money to make money. That's what we do. Well, there's two points I'd like to make there. First is because that's what the FCC says. The FCC said in its Coles Pharmacy decision that restrictions on advertisements were left in place, and what it did is it engaged in a primary purpose analysis about what the purpose of the communication was, and it held that the flu shot communication there was not a health care message. Was that based on subjective inquiries, or was that based on what the message said? It was based on the evidence as to the purpose of the communication. What was that evidence? In the Coles Pharmacy case? I don't recall exactly what the evidence was. Why should we be worried about what they called it or what they said? The issue for me is what is the message that's going out? Is it an advertisement? I mean, you know, we're exposed to lots of advertisements. Everybody in America is, and we know them when we see them. So why can't we just decide whether this is an advertisement or not? Well, you can. Or primarily a health care message. You can. And if it's an advertisement, then it doesn't qualify for the health care message exemption. I'm saying we should look at it and decide what we think it is inherently, based on the language, not by calling up a dozen witnesses and testing their credibility and trying to figure out were they really trying to make money or were they really trying to help the public, because I guarantee you each and every time they were really trying to make money. And I think it's beyond that. The evidence is beyond that in this case. And so I hear your point. If you determine that this is an advertisement, then you could enter that ruling and it would not qualify for the health care exemption. Yes. But what is it? I think what Judge Shin was asking was why look at the purpose. Why look at the language that makes this into an advertisement rather than a health care message? Because all of the evidence shows. So if you look at the FCC's rules. It's on the actual words, not other things. It's the words. I'm getting a call. Am I getting a call that relates to health care or am I getting an ad? Does it relate to my health care? I went there a year ago and I got a shot and now it's flu season again. And they're telling me, you know, this is a good time to come in and get another one. And that doesn't, you know, I mean, those are the circumstances that we're looking at from a customer's perspective. That's true. And I guess I want to reiterate that the FCC's rules say that you don't look at the words. You have to look at the purpose as well. In addition to that, what this court did in Latner was it looked only at HIPAA. So even if you reject the idea that you have to look at the FCC's definition of advertisement and you look only at HIPAA as this court did in Latner, you look at the definition of marketing in HIPAA. And the definition of marketing in HIPAA also requires a determination as to the purpose of the message. So the fundamental problem is that if you just have a one-word statement, then if it's clearly an advertisement, then it would indicate that it's not truly health care. The HIPAA's rule requires care related to the health of an individual. All it said was you came in last year, you got a flu shot, it's flu season again, you signed this thing saying we could call you about this stuff. Please come and get another health care. Thank you from your local Rite Aid pharmacy. In that instance, we would still have to, in your view, engage in a subjective inquiry as to what was the purpose of that message. Well, I don't know that it would be a subjective inquiry, but you would look at the evidence. What do you mean? Well, you would look at the objective evidence and determine what the primary purpose was. It's subjective from the vantage point of Rite Aid. That's the question. What was their subjective goal? Not how would a reasonable person read this message, but what is the purpose of Rite Aid? And so there would not be summary judgment in that case. There would not be summary judgment in a case that said it's flu season, it's really bad this year, and there's a vaccine available. It's time to get a flu shot. Thank you, Rite Aid. That would not be a summary judgment as a health care message because we would have to inquire as to what were they up to in sending this message. Well, you could also look at the context. Was there a flu epidemic at the time? There wasn't in this case. And so the point is that there are all kinds of instances. There's no epidemic. They just say it's flu season, time for a flu shot. Please come get one from your local Rite Aid pharmacy. That is not a health care message necessarily as a matter of law. As a matter of law, you look at the primary purpose of the communication. So there is nothing that is as a matter of law on its face a health care message. I think you have to look at the evidence. You have to look at the evidence because what the purpose of the communication is is going to tell you or not whether or not it's actually providing health care. I mean, you can have . . . We have your point. We have your point. You have some rebuttal time. Thank you. We'll hear from the other side. Good morning. May it please the Court. Karen Vogel on behalf of Rite Aid. I do think it's a very straightforward question, Your Honor. I think that it is a simple question of is this a health care message? If it is a health care message, then it comes within the exemption under the telemarketing rule and it affects the kind of consent that is required for that health care message. In this case, that consent was given. There's no dispute about the level of consent that was given here, the prior expressed consent. That was also the issue that was addressed in the Lattner case, whether that consent was sufficient. And this case is very similar to Lattner in that it . . . in our case, appears to be even stronger than it was in Lattner, that the Court found was correctly found to be a health care message. But the consent that was given was the same, and that was that prior expressed consent. Can I just ask, why isn't this . . . Obviously, it must not be because you're not even saying it is expressed written consent. But it was in writing, wasn't it? There is a difference under the law between prior expressed consent and prior expressed written consent. The prior expressed written consent is interpreted to mean requiring something greater, which is I consent to you calling me at all hours of the day or night with any kind of robocall you want to give. So with the prior expressed consent, you just have to give your phone number, and the FCC has determined that when you do that, you're inviting calls, that you get calls to that number. This message only went out to people who had already had their flu shot the previous year, right? That's correct, Your Honor. So it wasn't going to the public at all? No, it was not. It was for prescription flu shot. It went out to people who had gotten it from years previous. One call went out, and that was all that was received in this case. We don't think that there's any dispute at all from the face of the message that it was a health care message, if you look at it objectively. You can see it says, get your flu shot, okay, take out every . . . There were . . . the only thing in it that tied it to write it was write its name in the thing. But I don't know how you can make a flu shot. The health care message of a flu shot reminder call is to remind you to get the flu shot. It's not just that there's flu out there. It's that you need to get a shot. And so that kind of is part and parcel of the message. I don't know how you would separate that marketing aspect, if you want to call it that, from the health care message itself. It is what the message is. I suppose if they selflessly said you can get it at Rite Aid or CVS or Duane Reade or Walgreens or from your doctor who will charge you even more money for it, please go wherever you want to go and get a flu shot. That is correct. That could have been done. And as Your Honor noted, we don't dispute that there was a marketing aspect to the message there. I should say that we don't dispute that Rite Aid is in the business. It's a for-profit corporation. I think that that can be taken judicial notice of, that it's there to make money. It's not going to do things that don't make money for it. And that certainly is the benefit of this health care message to Rite Aid, but it also provides the health care message that, under the regulations, is exempt from that prior express written consent, which would be, I'll consent to any kind of call at all. The consent that was given here is the same kind of consent that was given in Latner, and it was very expressed to treatment, preventative care. If the Court has nothing further, I'll submit at that. Thank you. Thank you. We'll hear the rebuttal. Thank you, Your Honors. I want to ask the Court to look at this beyond the context of just a flu shot, because you're deciding what the rule for telemarketing of all health care products are going to be. The district court's decision would allow Rite Aid or any other pharmacy to robocall advertisements to someone that had purchased heartburn medication, that there's a sale on heartburn medication. The test can't be that the call simply mentions a health care product. There's a sale, right? Doesn't that sound different if they say, oh, we've got XYZ medications for cheap. Doesn't that sound more like . . . That sounds different, so get rid of the language that there's a sale. Just say, come get your heartburn medication. You purchased it two years ago. That is an advertisement, and the law and the FCC is clear that they want to distinguish between advertisements and true health care. The district court's rule is too broad because it allows even generic advertisements of any health care product to satisfy the health care standard as long as someone had purchased it from them in the past. That's why the purpose . . . Why isn't it an appropriate rule to say that a court should look at, objectively, at what the message is and decide whether it is primarily addressed legitimately to health care or whether it is primarily an advertisement without the need to depose the person who created the message or the CEO of the company as to why they are engaged in this process? Because then you're fundamentally going to always have the same problem of, well, it mentions a health care product. Why? It mentions a health care product. Oh, and by the way, whatever this stuff was, Fluzone is the greatest thing since sliced bread. By the way, you might want to press 1 and listen to this other message about Fluzone where somebody goes on and on about its tremendous benefits as compared with other similar products. That would look much like an advertisement, would it not? That would be very different than just get your damn flu shot. But that's not what it said. It said come to your Rite Aid pharmacy. Rite Aid's document said that the purpose was to drive consumers to their pharmacy, to buy all kinds of products, not just the flu shot. Yeah, once you're there, you'll see that they've got a sale on condoms and you'll buy a million, and that will make them a lot of money. And the question, because Congress enacted a statute that found that prerecorded robocalls are harmful, and it limited the FCC's ability to create exemptions from that law, and it said you can't create exemptions for telemarketing. We don't want telemarketers to use these robocalls as a means of advertising products. And what Rite Aid has done is telemarketed a health care product, and the rule that you enact today is going to apply to every health care product, not just flu shots, and the district court's test is too broad. The decision we're going to make today is about this particular message. That's what's before the court. That's true, and the FCC says you have to look at the purpose of the communication, which is what the district court said was irrelevant. Thank you. Thank you, Your Honors. World Reserve decision.